**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicolle Halbur, acting for and on behalf of MRS 1 Corp., f/k/a Adult Beverage Company, Inc., a Nevada Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>Jeff Kudla and Tracy Reinhardt,<br><br>                    Defendants,<br><br>and<br><br>MRS 1 Corp., f/k/a Adult Beverage Company, Inc., a Nevada Corporation,<br><br>                    Nominal Defendant. | No. CV12-01120-PHX-DGC<br><br>**ORDER** |

Defendants Jeff Kudla and Tracy Reinhardt have filed a motion to dismiss this corporate derivative action for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer the action pursuant to 28 U.S.C. § 1404. Doc. 9. Plaintiff Nicolle Halbur filed a response. Doc. 12. Defendants did not file a reply, and the motion is ripe for review. For the reasons set forth below, the Court will deny the motion.[1]

---

[1] Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. Background.

The following facts are taken from the complaint and are presumed to be true for purposes of the motion to dismiss. Plaintiff was at all relevant times a shareholder and director of MRS 1 Corp. f/k/a Adult Bevarage Company, Inc ("ABCO"), a Nevada corporation authorized to do business in Arizona. *Id.*, ¶¶ 1-2. Defendants Kudla and Reinhardt (collectively "Defendants") were also directors and shareholders of ABCO. *Id.*, ¶ 11. Plaintiff is a resident of Arizona, and Defendants are residents of Orange County, California. *Id.*, ¶¶ 4-5.

Plaintiff alleges that on March 21, 2012, Defendants made several bank withdrawals, totaling over $300,000 and draining ABCO's corporate account, without the required unanimous consent and approval of the ABCO board of directors. *Id.*, ¶¶ 15-17. Thereafter, Defendants held an improperly-noticed board meeting in which they purportedly ratified their self-distributions, conveyed a 5% ownership interest in ABCO to Reinhardt's brother, and stripped Plaintiff of her responsibilities for maintaining ABCO's corporate finances. *Id.*, ¶¶ 19-26. Defendants then ignored repeated emails from Plaintiff and ABCO's corporate counsel questioning their actions and demanding the return of the corporate funds. *Id.*, ¶¶ 27-32. ABCO continues to owe Plaintiff an outstanding balance of $137,000 for personal loans she made to the corporation that it is now unable to repay due to Defendants' misappropriations. *Id.*, ¶¶ 33-35. Plaintiff makes claims for breach of fiduciary duty (per Nev. Rev. Stat. § 78.138); improper distribution (per Nev. Rev. Stat. § 78.288(2)); conversion of corporate assets; constructive fraud; and unjust enrichment, and requests an accounting of the misappropriated funds. *Id.*, ¶¶ 37-64.

## II. Discussion.

### A. Personal Jurisdiction.

Plaintiff bears the burden of establishing personal jurisdiction. *See, e.g. Zigler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Because the Court is resolving the motion to dismiss without holding an evidentiary hearing, Plaintiff "need make only a

prima facie showing of jurisdictional facts to withstand the motion." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). That is, Plaintiff "need only demonstrate facts that if true would support jurisdiction over [Defendants]." *Id.*; *see Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000) ("Where . . . the district court does not hold an evidentiary hearing but rather decides the jurisdictional issue on the basis of the pleadings and supporting declarations, we will presume that the facts set forth therein can be proven."). Disputed facts must be decided in Plaintiff's favor. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

Because there is no federal statute that governs personal jurisdiction in this case, Arizona's long-arm rule applies. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995). Arizona Rule of Civil Procedure 4.2(a) "provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tenn. Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987)). Federal due process requires that a defendant have sufficient minimum contacts with the forum state that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit applies a three-part test for specific jurisdiction. Such jurisdiction exists if (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See, e.g., Bancroft & Masters, Inc.* 223 F.3d at 1086; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985). The Court will address each of these three factors.

### 1. Purposeful Availment.

In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the "purposeful availment" test enunciated in *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), which "requires that the defendant engage

in some form of affirmative conduct allowing or promoting the transaction of business within the forum state. This focus on the defendant's affirmative conduct is designed to ensure that the defendant is not haled into court as the result of random, fortuitous, or attenuated contacts.'" *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted); *see Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (applying purposeful availment test in breach of contract action); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir. 1988). A defendant has engaged in affirmative conduct and thereby "purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum.'" *Gray*, 913 F.2d at 760 (quoting *Burger King*, 471 U.S. at 475-76); *see Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997) (stating that "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents") (citing *Ballard*, 65 F.3d at 1498).

Defendants argue that Plaintiff has wholly failed to allege facts to establish that each defendant purposefully directed its activities at Arizona. Doc. 9 at 6. Defendants cite to Defendant Kudla's declaration, asserting that he became an investor and director of ABCO based on discussions with Defendant Reinhardt that took place in California where, he asserts, ABCO was headquartered. Doc. 9 at 4. Kudla attests that Plaintiff handled a small amount of ABCO's accounting from her home in Arizona, but Kudla was told he would have access to all accounting records. *Id.* at 4-5. He also attests that while serving as Executive Vice President of ABCO, he secured corporate counsel and a trademark attorney from Irvine, California, both of whom were instructed to identify Newport Beach, California, as ABCO's principle place of business; and that, beginning in 2010, ABCO began leasing an office in Newport Beach, California, later moving to a larger corporate headquarters in Costa Mesa, California, at which locations ABCO coordinated marketing, engaged in product development, conducted business meetings with outside venders and contractors, and housed employees, including its President and

Chief Executive Officer, Executive Vice President, and Vice President of Sales and Marketing. *Id.*

Plaintiff cites to her own declaration stating that she, an Arizona resident, provided the start-up capital for ABCO and began meeting with distributors and wholesalers to develop a business plan based on an alcoholic drink Reinhardt concocted, and that Kudla and Reinhardt flew to Arizona to meet with her about running the business and to hand-deliver Kudla's initial investment check. Doc. 12 at 3; 12-1, Decl. of Nicolle Halbur, at 2-4, ¶¶ 5, 7-11. Plaintiff's declaration further states that ABCO opened its first Arizona office in Chandler, Arizona, in 2010, while the office in California was only a mail drop box, and hired two full-time employees who, together with Plaintiff, worked in the Arizona office and performed 95% of ABCO's work. *Id.* at 4, ¶¶ 12-14. Due to the high volume of work flowing through this office, Plaintiff attests that ABCO later leased a larger office in Chandler which became its principle place of business, housing all of its business records and files, and it was the address of record for ABCO's bank accounts, insurance policies, cell phones, and company car. *Id.* at 4-5, ¶¶ 15-16. Plaintiff attests that ABCO had a designated statutory agent authorized to accept process in Arizona, it paid Arizona state taxes, and Plaintiff regularly directed, controlled, and coordinated many or most of ABCO's business activities from the Arizona office. *Id.* at 5, ¶ 17; 5-6, ¶ 18 (enumerating business activities conducted from the Arizona office, including purchasing raw materials, managing orders, staffing promotional events, and overseeing payroll and benefits). Taken as true, these allegations are sufficient to show that Defendants knowingly created obligations between themselves and an Arizona resident, and that as directors of ABCO they purposefully availed themselves of the privileges of doing business in Arizona. At most, Defendants' contrary contentions present an issue of fact about where ABCO was headquartered or had its principle place of business.

### 2. "Arising Out of."

The Ninth Circuit has adopted a "but for" test for determining whether a cause of action arises out of a defendant's forum-related activities. *See Omeluk v. Langstein Slip*

& *Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). The "arising out of" requirement is met if, "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). All of Plaintiff's claims arise out of Defendants' alleged misappropriation of funds from ABCO's Arizona-based bank account. These funds allegedly resulted from activities performed principally in Arizona, the records of which were maintained in ABCO's Arizona office. Plaintiff's causes of action would, therefore, not have arisen but for the contacts between Defendants and Arizona.

### 3. Reasonableness.

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements are satisfied. *See Int'l Shoe*, 326 U.S. at 316; *Ziegler*, 64 F.3d at 474-75. A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if these two requirements are met. *See Ballard*, 65 F.3d at 1500. The burden then shifts to the defendant to "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

The Ninth Circuit considers seven factors to determine whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant of litigating in the forum, (3) the extent of conflicts with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *See Ziegler*, 64 F.3d at 475 (citing *Terracom*, 49 F.3d at 561); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (listing several of the seven factors).

Defendants do not discuss any of the above-listed factors to show that jurisdiction in this Court would be unreasonable. In putting forth reasons to transfer pursuant to 28 U.S.C. § 1404, Defendants argue that it would be inconvenient to Defendants to litigate

in Arizona because Defendants and all potential non-party witnesses reside in the Central District of California.  Doc. 9 at 10-11.  Plaintiff counters that a significant number of party and non-party witnesses reside in Arizona, including Plaintiff, ABCO's two Arizona employees, ABCO's vendors, banking contacts, and other third parties.  Doc. 12 at 16-17.  In light of the fact that the Court must evaluate Defendants' burden against the corresponding burden to Plaintiff (*see Brand v. Menlove Dodge*, 796 F. 2d 1070, 1075 (9th Cir. 1986)), the Court cannot conclude that this factor weighs against jurisdiction.

The remaining factors weigh in favor of jurisdiction.  As already discussed, Plaintiff has alleged facts showing that Defendants, through their involvement as directors of ABCO, engaged in extensive purposeful interjection into Arizona.  Defendants give no reasons why litigating this suit in Arizona would conflict with California's sovereignty or lead to less judicial efficiency.  Jurisdiction in this Court also serves both the interest of the forum state in adjudicating an issue involving an Arizona-based corporation and Plaintiff's interest in obtaining convenient and effective relief.  Even if an alternative forum is available in the Central District of California, Defendants have failed to present a compelling case that personal jurisdiction in Arizona would be unreasonable.  The Court concludes that it has specific personal jurisdiction over Defendants.

**B.     Venue.**

Defendants argue that this case should be dismissed for improper venue.  Doc. 8 at 14.  The Court finds that venue is proper under 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  Both factors are met here.  Although Defendants allegedly conducted their improper money transfers and improperly-noticed meeting in California, Plaintiff alleges that the money transfers were directed at ABCO's Arizona bank account and that Defendants' misrepresentations about the meeting were directed at her in Arizona.  Doc. 12-1, ¶¶ 25-26.  The fact that these alleged improper actions were

directed at Arizona, making it the "locus of the injury," is sufficient to show that a substantial part of the events giving rise to Plaintiff's claims occurred in Arizona. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (finding where one of the plaintiffs' alleged "harms" was felt in Nevada, that "a substantial part of the events giving rise to the claim occurred in Nevada."); *Xcentric Ventures LLC v. Borodkin*, No. CV-11-1426-PHX-GMS, 2012 WL 692976, at *7 (D. Ariz., March 1, 2012) (citing *Myers*). As discussed above, Plaintiff also alleges that the property at issue – in excess of $300,000 – was held in ABCO's Arizona bank account and that Arizona is where the business was headquartered and where all of its relevant financial records were held. These facts, taken as true, are sufficient to establish proper venue.

### C.     Transfer.

Defendants ask the Court to transfer this action to the Central District of California because a balance of convenience to the parties strongly favors transfer. Doc. 9 at 10. "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court may consider several factors in determining whether to transfer venue, including the plaintiff's choice of forum, the extent of the parties' contacts with the forum, the contacts in the forum relating to the plaintiff's cause of action, the availability of non-party witnesses, and the accessibility of evidence. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

Defendants argue that the location of potential witnesses, the residences of the parties, and the location of the operative events all favor transfer. Doc. 9 at 10-11. As previously discussed, the location of potential witness and parties neither favors nor weighs against transfer because at least one party and a number of potential witnesses reside in each state. To the extent that Defendants are inconvenienced by having to defend claims in Arizona, they have not presented any facts, beyond the mere fact of their residence, showing that the inconvenience of having to litigate in a neighboring state is sufficiently onerous to override Plaintiff's choice of forum. *See Decker Coal Co. v.*

*Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Finally, although Defendants argue that all operative events occurred in California, this argument conflicts with Plaintiff's allegations that the Court must take as true. On the whole, Defendants have failed to show that the convenience of the parties and witnesses and the interest of justice will best be served by transfer to the Central District of California.

**IT IS ORDERED** that Defendants' motion to dismiss or, alternatively, to transfer this action (Doc. 9) is **denied**.

Dated this 8th day of January, 2013.

David G. Campbell
United States District Judge